(No. 54847.

EULA JOHNSON, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (The Peoria County Belwood Nursing Home, Appellee).

*Opinion filed March 16, 1982.*

Morton S. Goldfine, of Goldfine & Bowles, P.C., of Peoria, for appellant.

Heyl, Royster, Voelker & Allen, of Peoria, for appellee.

JUSTICE WARD delivered the opinion of the court: Eula Johnson on April 18, 1979, filed an application

for adjustment of her claim under the Workmen's Compensation Act (Ill. Rev. Stat. 1977, ch. 48, par. 138.1 *et seq.*) for accidental injuries arising out of and in the course of her employment by the respondent, the Peoria County Belwood Nursing Home. After a hearing, an arbitrator made an award of compensation for both temporary total incapacity and permanent partial disability. The decision was affirmed by the Industrial Commission. The circuit court of Peoria County, however, set aside the Commission's finding on the ground that the finding of an accidental injury was against the manifest weight of the evidence. The claimant appealed directly to this court pursuant to Rule 302(a). 73 Ill. 2d R. 302(a).

Mrs. Johnson, who was the only witness at the arbitrator's hearing, testified that she was hired ·by the respondent in mid-February 1978. She worked in the dietary kitchen, and her duties included the loading and unloading of a food cart. The cart weighed approximately 500 pounds, and she was required to push and pull the cart as she maneuvered it through routes in the nursing home each day.

Prior to working at the nursing home her hands had never pained her, she said. On March 14, 1978, however, her hands were painful. The problem with her hands had developed gradually, and by March 14 she said that she experienced pain and a numbness in her fingers, hands and arms severe enough for her to inform her employer and to seek medical attention. She believed that the condition may have been caused by the pulling of the cart, because that was the most physical part of her work.

She first consulted her personal physician, Dr. Petras Banys, who ordered a nerve test to be made at the Institute of Physical Medicine and Rehabilitation in Peoria on March 14. Dr. Kyung J. Lee's report of the test results stated that Mrs. Johnson said that she had been experiencing pain and numbness in her hands for about four weeks.

Dr. Banys also referred Mrs. Johnson to an orthopedic surgeon, Dr. David Connor. His report stated that he first examined Mrs. Johnson on August 2, 1978. Dr. Connor diagnosed her problem as bilateral carpal tunnel syndrome, which another report in evidence described as the entrapment of the median nerve on both wrists. On August 21, he performed surgery to decompress the median nerves of both hands. Dr. Connor stated that he was uncertain whether the condition was work related.

Dr. Banys' evidence deposition was taken and received into evidence. His records showed that in June 1977 he had examined Mrs. Johnson for cafeteria work and that his examination disclosed some weakness in the wrists.

Dr. Horacio Rivero examined the claimant in June 1979, after she had filed her application for adjustment of claim. A report he prepared quoted from a medical treatise to the effect that the syndrome may be initiated by a direct trauma, such as a fall on the outstretched hand, or by tenosynovitis of the flexor tendons, or it could result as a complication of an injury such as a Colles' fracture or a fracture of any of the carpal bones. His report, and the other reports described, were received in evidence.

On this evidence, the arbitrator found that on March 14, 1978, the claimant sustained accidental injuries arising out of and in the course of her employment. He awarded her compensation for temporary total disability and for permanent partial disability as well. On review the Industrial Commission affirmed the arbitrator's decision but modified his award of permanent partial disability.

The respondent sought a writ of *certiorari,* and the circuit court of Peoria County set aside the finding of the Commission. The court held that there was no compensable injury because there was no proof that an accident had occurred. The only issue, the parties agree, is whether the Commission's finding that Mrs. Johnson

sustained accidental injuries arising out of and in the course of her employment was contrary to the manifest weight of the evidence.

The Workmen's Compensation Act is described in its title as "An Act to promote the general welfare *** by providing compensation for accidental injuries or death suffered in the course of employment ***." In *International Harvester Co. v. Industrial Com.* (1973), 56 Ill. 2d 84, 89, this court stated:

> "[A]n injury is accidental within the meaning of the Act when it is traceable to a definite time, place and cause and occurs in the course of employment unexpectedly and without affirmative act or design of the employee. This definition has been consistently adhered to by this court."

The claimant does not point to a particular event or occurrence as the accident causing her injury or condition, and her testimony was that the condition developed gradually.

Nevertheless she contends that she proved an accidental injury under the "repetitive trauma" concept. Her argument is supported, she claims, by the decisions in *Quaker Oats Co. v. Industrial Com.* (1953), 414 Ill. 326, and *Perkins Products Co. v. Industrial Com.* (1942), 379 Ill. 115, in which this court held compensable injuries that resulted from repeated actions, such as the repeated falling of cans upon an employee's foot *(Quaker Oats)*, or repeated movement of the arms in the employee's work activities *(Perkins)*. She contends that here she proved an accident by showing that the repeated traumas involved in the daily work of loading and maneuvering the cart caused the medical condition.

Neither of the cited cases is helpful to the claimant. In both *Quaker Oats* and *Perkins* there was medical testimony as to causation, which warranted the Commission's relating the injuries with the repeated traumas. (414 Ill. 326, 334; 379 Ill. 116, 119.) There is no such evidence of

causation in the record here.

Dr. Lee's report, which was introduced into evidence by the claimant, stated that she had been experiencing pain and numbness in the hands for about four weeks prior to March 14. In none of the numerous medical reports in evidence was an opinion expressed that her condition was caused, or could have been caused, by her steering of the carts. *Cf. Festa v. Teleflex, Inc.* (Fla. App. 1980), 382 So. 2d 122 (where medical evidence showed that the claimant's carpal tunnel syndrome was primarily attributable to his work).

Mrs. Johnson relies heavily but vainly upon Dr. Rivero's report. There he recounted her work activities as described to him by Mrs. Johnson. Nowhere in the report did Dr. Rivero say that he considered that those activities could have caused her condition. In the part of his report labeled "diagnosis," Dr. Rivero simply quoted from a medical text on the treatment of athletic injuries that listed a variety of possible causes for the carpal tunnel syndrome. There was no reference to evidence connecting any of those causes to the claimant's employment activities.

A court cannot, of course, arbitrarily set aside findings of the Industrial Commission. It cannot substitute its judgment for that of the Commission and must respect permissible inferences the Commission may have drawn from the evidence. (*City of Chicago v. Industrial Com.* (1975), 60 Ill. 2d 283, 286.) A court must, however, set aside a finding of the Commission which is contrary to the manifest weight of the evidence. We conclude that the circuit court here properly held that the Commission's finding in favor of the claimant was contrary to the manifest weight of the evidence. Mrs. Johnson's injury or condition was not shown to be traceable to a definite time, place and cause, and there simply was not evidence to show that her work activities caused her physical problem.

For the reasons given, the judgment of the circuit court of Peoria County is affirmed.

*Judgment affirmed.*