JERRY G. SESSION, Appellee, *v.* THE INDUSTRIAL COMMISSION *et al.* (Hiram Walker & Sons, Inc., Appellant).

Third District (Industrial Commission Division)   No. 3—84—0130WC

Opinion filed June 8, 1984.

Raymond C. Williams, of Goldsworthy & Fifield, of Peoria, for appellant.

Matthew C. Mays, of Knuppel, Grosboll, Becker & Tice, of Petersburg, for appellee.

PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

The circuit court reversed a decision of the Industrial Commission which had concluded that the employee, Jerry G. Session, had failed to prove a causal connection between the carpal tunnel syndrome of his right hand and his accident in the Hiram Walker & Sons plant on September 12, 1979. The decision of the arbitrator awarding compensation and medical expenses based on the carpal tunnel syndrome was reinstated by the circuit court. The employer appeals.

Claimant was employed as a checker in the company's shipping department. His duties required that he pick up orders for the truck drivers and send them out to the trucks. He testified that on September 12, 1979, he bent over to pick up a case of whiskey, felt something "pop" in his arm, and experienced difficulty straightening up. He said that after resting for a few minutes, he reported to the nurse at the first-aid station that his back hurt and that his hand was "kind of numb." He had preexisting back trouble and had had a laminectomy performed several years before. The nurse referred him to Dr. Palmer in Peoria for X rays.

The nurse testified that she prepared an initial report of the accident from the employee's own description of what happened. After she finished typing, she asked claimant to read and sign it. She testified that, at the time she saw the claimant, he related nothing concerning an injury to his right arm, hand or wrist. The claimant acknowledged that his signature appeared on the form but stated he was unable to read the information because of illiteracy.

A fellow employee testified that he was present at the time of the injury and was told by the claimant that he had hurt his arm. He spoke to claimant later by the elevator, at which point claimant com-

plained of pain in his back. The witness said he had seen the claimant look at orders as a checker and had seen him look at the newspaper. He assumed that he could read.

The claimant testified that he had repeated his complaint concerning the discomfort in his hand to Dr. Palmer but that the doctor said he had probably pulled a ligament and did not order X rays. Session did not claim to have related his version of the accident, including the "popping" sound, to Dr. Palmer.

After the accident, Session consulted his own physician, Dr. Choi, in Springfield. He said that although he had no prior trouble, he now had no feeling in his thumb and had a tingling sensation in the ends of his fingers. Dr. Choi had claimant hospitalized and on October 1, 1979, performed a release carpal tunnel in his right hand. Following this surgery, his hand was not as strong as it had been, and he experienced some continuing numbness. He also did not tell Dr. Choi how the accident happened or about the "popping" sound.

The claimant contends that both the deposition testimony of Dr. Choi and that of Dr. Rivero, included in the record before the Industrial Commission, showed a causal connection between the carpal tunnel syndrome and the accident of September 12, 1979. Thus, he argues, there was no factual support for the decision of the Commission and it was properly reversed by the circuit court as against the manifest weight of the evidence.

The critical inquiry must focus on the deposition testimony of Dr. Choi. Dr. Choi examined the claimant on September 28, 1979. Claimant complained of back pain going to the right leg and foot. After Dr. Choi examined claimant's back, claimant mentioned that he was having pain in the right hand. Dr. Choi found that claimant had a nerve compressed at the right wrist, requiring surgery to release the compression. Following surgery, the claimant continued to have slight nerve dysfunction. Dr. Choi then gave the following testimony concerning the cause of claimant's injury:

> "Q. The question I am asking you now is whether or not you have an opinion, based upon a reasonable degree of medical certainty, as to whether the history, the popping of the wrist which he related to you, could, might have caused or aggravated the compressed nerve which you operated on for in his wrist?
>
> * * *
>
> A. I could not make a diagnosis with that kind of history, but he described the symptoms. That is why I made the diagnosis.

Q. Yes, but he also explained to you the history of the popping of the wrist?

A. Yes.

Q. That apparently happened when he was lifting that?

A. Yes.

Q. Could or might that have aggravated the preexisting symptoms which he had given you?

A. I cannot answer that because usually the carpal tunnel syndrome does not develop that way.

Q. Would it be aggravated by that?

A. I do not think so.

Q. All right, Doctor, what normally causes a carpal tunnel syndrome?

A. It usually comes from repeated injury or one single injury, a severe injury. Many times it come [sic] without any reason.

Q. In your diagnosis and treatment did you form an opinion as to whether or not this was a work related injury?

A. He did not give me the history of how that happened. He just gave me history he had symptoms two weeks. [Sic]"

Claimant presented no evidence regarding the demands of his work so as to establish that his arm and wrist were subjected to repetitive trauma. In the absence of such evidence, Dr. Choi was unable specifically to establish a causal relationship between claimant's activity on September 12 and his development of the carpal tunnel syndrome. It was Dr. Choi's testimony that carpal tunnel syndrome would not ordinarily develop on account of a single instance of picking up an object. His statement that if a person lacking previous symptoms were to develop them at the time of lifting an object, "[t]hat means the symptoms developed when he reached hand [sic] to pick up case," purported to describe only the point at which the manifestations, rather than the condition itself, became apparent.

The testimony of Dr. Horacio Rivero, who examined claimant on October 23, 1981, and testified to the causation between the carpal tunnel syndrome and the accident in answering a hypothetical question, was premised on the indications that claimant performed heavy and repeated lifting. However, the sole account in the record of any physical exertion required of claimant by his duties was that on a single instance he picked up a case weighing 31½ pounds. There was no testimony as to the frequency with which such lifting was required. See *Caterpillar Tractor Co. v. Industrial Com.* (1983), 98 Ill. 2d 400, 405-06.

This case is factually similar to *Caterpillar* in this regard. In *Caterpillar*, the supreme court found that there was no evidence from which the inference could be drawn that the employment activities constituted repetitive trauma and that Dr. Rivero's conclusions were based on facts not in the record and therefore did not establish causation. *Caterpillar Tractor Co. v. Industrial Com.* (1983), 98 Ill. 2d 400, 406. See also *Johnson v. Industrial Com.* (1982), 89 Ill. 2d 438, 443.

The credibility of witnesses and causal connection are questions for the determination of the Industrial Commission. The Commission's decision will not be set aside on review unless contrary to the manifest weight of the evidence. (*Certi-Serve, Inc. v. Industrial Com.* (1984), 101 Ill. 2d 236, 244. See also *Domagalski v. Industrial Com.* (1983), 97 Ill. 2d 228, 236.) It is axiomatic that the Commission is entitled to draw reasonable inferences from the evidence and that the court will not disregard those inferences merely because other inferences might have been drawn. *Berry v. Industrial Com.* (1984), 99 Ill. 2d 401, 406-07.

We note that the circuit court confirmed the Industrial Commission's decision which denied the claims for permanent disability with respect to claimant's back and leg. The Commission awarded the claimant $226.67 per week for a period of 8.37 weeks for temporary total disability, and this was confirmed by the circuit court. No cross-appeal has been taken by the claimant.

We conclude that the finding of the Industrial Commission was not against the manifest weight of the evidence. The judgment of the circuit court of Peoria County is therefore vacated, and the finding of the Industrial Commission is reinstated.

Judgment vacated; order reinstated.

McNAMARA, BARRY, WEBBER, and KASSERMAN, JJ., concur.